UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICARDO ROSADO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CHINA NORTH EAST PETROLEUM HOLDINGS LIMITED, WANG HONG JUN, ZHANG YANG and JU GUIZHI,<br><br>Defendants. | Civil Action No. 10-CV-4577 |
| STEVEN WEISSMANN, On Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CHINA NORTH EAST PETROLEUM HOLDINGS LIMITED, HONGJUN WANG, YANG ZHANG and GUIZHI JU,<br><br>Defendants. | Civil Action No. 10-CV-4775 |
| TONY MOORE, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br>v.<br><br>CHINA NORTH EAST PETROLEUM HOLDINGS LIMITED, WANG HONG JUN, ZHANG YANG DIO and JU GUIZHI,<br><br>Defendants. | Civil Action No. 10-CV-5263 |

**MEMORANDUM IN SUPPORT OF MOTION
BY CHRISTINE BAUMAN, JULIAN J. AUDE,
DARR BARSHIS AND CRAIG MOORE TO CONSOLIDATE
ALL RELATED ACTIONS, TO BE APPOINTED LEAD PLAINTIFFS,
AND FOR APPROVAL OF THEIR SELECTION OF
<u>FARUQI & FARUQI, LLP AND RYAN & MANISKAS, LLP AS CO-LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ....................................................................................................... ii
I.   PRELIMINARY STATEMENT ....................................................................................... 1
II.  PROCEDURAL BACKGROUND..................................................................................... 2
III. STATEMENT OF FACTS ................................................................................................. 3
IV.  ARGUMENT...................................................................................................................... 6
     A.  The Actions Should Be Consolidated For All Purposes............................................... 6
     B.  The Court Should Appoint Movants as Lead Plaintiffs................................................ 7
         1.  The Procedure Required By The Exchange Act To Appoint A Lead
             Plaintiff ................................................................................................................... 7
         2.  Movants Satisfy The Lead Plaintiff Requirements Of The Exchange Act........... 9
             (a) Movants Have Complied With the Threshold Exchange
                 Act Lead Plaintiff Requirements .................................................................... 9
             (b) Movants Have The Largest Financial Interest In the Relief
                 Sought By The Class..................................................................................... 10
             (c) Movants Otherwise Satisfy Rule 23 ............................................................. 10
                 (i)  Movants' Claims Are Typical of the Claims of the Class ...................... 11
                 (ii) Movants Will Fairly And Adequately Represent
                      The Interests Of The Class..................................................................... 12
     C.  The Court Should Approve Movants' Choice of Co-Lead Counsel ........................... 12
V.   CONCLUSION................................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Caiafa v. Sea Containers, Ltd.*,
   No. 06-cv-2565, 2006 U.S. Dist. LEXIS 57776 (S.D.N.Y. Aug. 14, 2006) ............................. 7

*Glauser v. EVCI Career Colleges Holdings Corp.*,
   236 F.R.D. 184 (S.D.N.Y. 2006) ........................................................................................... 7

*Goldberger v. PXRE Group, Ltd.*,
   No. 06-cv-3410, 2007 U.S. Dist LEXIS 23925 (S.D.N.Y. Mar. 30, 2007) ............................ 6

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................................... 11

*In re: ESPEED, Inc. Sec. Litig.*,
   232 F.R.D. 95 (S.D.N.Y. 2005) ..................................................................................... 11, 12


**STATUTES AND OTHER AUTHORITIES**

15 U.S.C. § 78j(b) ........................................................................................................................ 3

15 U.S.C. § 78t(a) ........................................................................................................................ 3

15 U.S.C. § 78u-4(a) .................................................................................................................... 7

15 U.S.C. §78u-4(a)(2)(A) ........................................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(A)(i) .................................................................................................. 2, 7

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ................................................................................................. 7

15 U.S.C. § 78u-4(a)(3)(B) .......................................................................................................... 8

15 U.S.C. §78u-4(a)(3)(B)(ii) ...................................................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(iii) ............................................................................................. 8, 10

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa) ........................................................................................... 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ......................................................................................... 10

15 U.S.C. §78u-4(a)(3)(B)(v) ..................................................................................................... 12

17 C.F.R. § 240.10b-5 .......................................................................................................................3

Rule 10b-5 ..................................................................................................................................1, 2, 3

Rule 23 ...............................................................................................................................................10, 11

Rule 23(a) ..........................................................................................................................................10, 11, 12

Rule 23(a)(4) ....................................................................................................................................12

I.    **PRELIMINARY STATEMENT**

Before the Court, now, are a series of shareholder class actions on behalf of shareholders of China North East Petroleum Holdings Limited ("China North" or the "Company"). The cases allege a core of substantially similar facts, involving the alleged restatement of the Company's financial results during the Class Period. Two issues are presently before the Court, including the consolidation of the above-captioned related cases and the appointment of lead plaintiffs and the approval of their selection of co-lead counsel pursuant to the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-4, et seq.

Movants Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore ("Movants") are investors who purchased shares of China North during the Class Period. As a direct result of defendants' alleged wrongdoing in these related cases, Movants, together and individually, suffered substantial losses. Now, Movants seek to serve the Class as Lead Plaintiffs. Pursuant to PSLRA, Movants hereby move this Court for the entry of an Order: (i) consolidating all related actions filed against China North alleging violations of the federal securities laws, as well as any other related actions pending in this Court and all subsequently filed or transferred actions (collectively, the "Related Actions"); (ii) appointing Movants as Lead Plaintiffs for the Class; and (iii) approving Movants' selection of Faruqi & Faruqi, LLP and Ryan & Maniskas, LLP as Co-Lead Counsel.

The Related Actions are federal securities fraud class actions brought against China North and certain officers and directors of the Company. Each of the Related Actions seeks damages, in general, for violations of Section 10b of the Exchange Act and Rule 10b-5 promulgated thereunder on behalf of all persons or entities who purchased or otherwise acquired

1

the common stock of China North during the period August 14, 2009 through May 26, 2010, inclusive (the "Class Period").

To their knowledge, Movants suffered among the larger losses of any group, if not the largest loss. Given their losses resulting from Class Period purchases of China North common stock, Movants are well qualified to serve as Lead Plaintiffs in this action. As discussed below, Movants satisfy each of the requirements of the PSLRA and, therefore, are qualified for appointment as Lead Plaintiffs in these Actions.

## II.     PROCEDURAL BACKGROUND

On or about June 11, 2010, plaintiff Ricardo Rosado filed the first action, *Ricardo Rosado v. China North East Petroleum Holdings Limited, et al.*, 10-cv-45770-MGC (the "*Rosado* action") in the United States District Court for the Southern District of New York on behalf of a class consisting of all persons and entities who purchased or otherwise acquired China North common stock from August 14, 2009 and May 26, 2010, inclusive, and were damaged thereby (the "Class"). The *Rosado* action alleged violations of Sections 10b and 20a of the Exchange Act and Rule 10b-5 promulgated thereunder. Pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(A)(i), on June 3, 2010, plaintiff Rosado published notice of the pendency of the action over a widely-available, national business-oriented wire service, *Business Wire*. Ricardo advised members of the Class of their right to move the Court to serve as lead plaintiff(s) no later than 60 days from the date of publication of the notice or August 10, 2010. *See* Declaration of Lubna Faruqi In Support of Motion by Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore To Serve As Lead Plaintiffs ("Faruqi Decl."), Exhibit A. Movants file this Motion within the 60-day period following Rosado's publication of the June 11, 2010 notice.

After the *Rosado* action was filed, several other class actions were filed, alleging substantially similar claims under the Exchange Act. All of the actions were filed as related to the *Rosado* action and pending before Judge Cedarbaum.

### III. STATEMENT OF FACTS

This is a securities fraud class action on behalf of all persons who purchased or otherwise acquired China North securities, including purchasers of common stock, call options and sellers of put options during the period from August 14, 2009 through and including May 26, 2010 (the "Class Period"). This class action is brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a); and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

During the Class Period, China North issued materially false and misleading statements and omitted to state material facts that rendered their affirmative statements misleading as they related to the Company's financial performance, business prospects, and financial condition. The Company's financial statements and related disclosures about its business and financial condition and internal controls were materially false and misleading because the Company's financial statements did not comply with Generally Accepted Accounting Principles, its publicly stated accounting policies and procedures, and the Company lacked adequate internal controls.

The Class Period begins on August 14, 2009, when the Company filed with the SEC its quarterly report for the second quarter ended June 30, 2009. The 10-Q was signed by defendants Wang and Zhang. Attached to the 10-Q are Sarbanes-Oxley Act of 2002 ("SOX") certifications, executed by Wang and Zhang, which certify, among other things, that the financial information contained in the 10-Q were accurate and that they disclosed any material changes to the Company's internal control over financial reporting.

On September 16, 2009, the Company issued a press release announcing that it had entered into definitive agreements to sell 4 million shares of its common stock in a registered direct offering to several select institutional investors, representing $18.4 million.  On September 21, 2009, the Company announced the closing of the transaction.

On November 16, 2009, the Company filed with the SEC its quarterly report for the third quarter ended September 30, 2009.  The 10-Q was signed by defendants Wang and Zhang.  Attached to the 10-Q are SOX certifications, executed by Wang and Zhang, which certify, among other things, that the financial information contained in the 10-Q were accurate and that they disclosed any material changes to the Company's internal controls over financial reporting.

On December 14, 2009, the Company announced that it had entered into definitive agreements to sell over 1.9 million shares of its common stock pursuant to a registered direct offering to several select institutional investors, representing gross proceeds of $13.5 million.

On February 23, 2010, the Company issued a press release entitled "China North East Petroleum Announces Revisions to Previously Issued Financial Statements for 2008 and 2009 Due to Non-Cash Accounting Adjustments."  This announcement, issued after the market closed, caused the Company's stock to fall on February 24, 2010 from $9.37 per share to $8.68 per share.

On March 8, 2010, China North disclosed that the Company had determined that its financial statements for the year ended December 31, 2008, and each interim quarter within that year, and for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009 should no longer be relied upon and should be restated as a result of certain non-cash errors contained therein regarding the accounting for: (i) warrants issued in conjunction with a secured debenture on February 28, 2008, which warrants should have been classified according to Emerging Issues

Task Force 00-19 as liability instruments rather than equity instruments; (ii) the change in the fair value of those warrants from the date of issuance through the end of the reporting period; (iii) effective interest expense arising from amortization of the discount to the carrying value of the secured debenture; (iv) the recording of warrants issued to investment consultants in connection with the secured debenture as deferred financing costs instead of consulting fees; (v) the amount of amortization of deferred financing costs associated with the issuance of that secured debenture; (vi) amounts payable to a consultant included in accrued liabilities; (vii) compensation issued to employees in the form of stock; (viii) depreciation, depletion and amortization of oil producing properties; (ix) ceiling test reduction of the net carrying value of oil producing properties; (x) income tax expense for the above items; and (xi) minority interests for certain of the above items.  As it was further disclosed on April 20, 2010, the total adjustment to the Company's net income for the year 2008 and the first three quarters of 2009 was estimated to be more than $28 million.

On April 15, 2010 the Company issued a press release announcing that it was delaying the filing of its annual report for fiscal 2009 on Form 10-K with the SEC and that it was postponing the release date for its fiscal 2009 year ended financial results.  This announcement caused the Company's stock to fall on April 15, 2010 from a prior closing price of $9.85 per share to $9.10 per share.

The next day, on April 16, 2010, the Company issued a press release revealing, among other things, additional accounting issues it discovered.  This announcement caused the Company's stock to fall that day from $9.10 per share to $8.71 per share, and an additional $.70 per share the next day.

5

On April 20, 2010, the Company filed an amended 8-K with the SEC setting forth further adjustments to its financial statements for the fiscal year ended December 31, 2009 and all the interim periods in 2008 and the first three quarters of 2009.

Subsequently, on May 25, 2010, the NYSE AMEX halted China North's stock for non-compliance with AMEX's listing criteria. China North stock has not resumed trading since that time. On May 27, 2010, the Company disclosed the resignation of the Company's Chairman of the Board, CFO, a director, and the placement of the CEO on administrative leave pending the outcome of the current forensic audit. The forensic audit preliminarily found that in 2009, cash transfers occurred between the bank accounts of the Company and its subsidiaries and the personal bank accounts of the Company's CEO and a director who is also the mother of the CEO.

As a result of defendants' wrongful acts and omissions, and the precipitous declines in the market value of the Company's securities, Movants and other Class members have suffered significant losses and damages.

## IV.   ARGUMENT

### A.   The Actions Should Be Consolidated For All Purposes

Federal Rule of Civil Procedure 42(a) states that courts may order consolidation of all actions "involving common questions of law or fact. . . ." Fed. R. Civ. P. 42(a). This Court has broad discretion to determine whether to consolidate these Related Actions, but considerations of judicial economy generally prompt courts to consolidate factually similar cases such as these. *See e.g. Goldberger v. PXRE Group, Ltd.*, No. 06-cv-3410, 2007 U.S. Dist LEXIS 23925, at * 5-6 (S.D.N.Y. Mar. 30, 2007) (*citing Barnet v. Elan Corp.*, 236 F.R.D. 158, 160 (S.D.N.Y. 2005)).

6

Each of the Related Actions is a class action, arising out of the substantially similar operative sets of facts.  Each of the Related Actions asserts facts involving defendants' issuing false and misleading statements about China North.  As such, consolidation is appropriate where, as here, the Related Actions involve common questions of fact.  *See* Fed. R. Civ. P. 42(a); *see also Glauser v. EVCI Career Colleges Holdings Corp.*, 236 F.R.D. 184, 186 (S.D.N.Y. 2006) (securities litigation where complaints are based on same statements are appropriate for consolidation); *Caiafa v. Sea Containers, Ltd.*, No. 06-cv-2565, 2006 U.S. Dist. LEXIS 57776 (S.D.N.Y. Aug. 14, 2006) (complaints alleging that series of statements violating securities laws ripe for consolidation).  Because of the substantially similar fact patterns and legal issues in the Related Actions, this Court should order consolidation.  Movants are aware of no party or other movant who opposes consolidation.

### B. The Court Should Appoint Movants as Lead Plaintiffs

#### 1. The Procedure Required By The Exchange Act To Appoint A Lead Plaintiff

The Exchange Act governs the appointment of a lead plaintiff in each class action arising thereunder.  15 U.S.C. § 78u-4(a).  As an initial matter, within 20 days of filing a complaint, the first plaintiff to file must publish notice, informing potential class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  Counsel for Plaintiff Rosado published such a notice over the *Business Wire* on June 11, 2010.  *See* Faruqi Decl., Ex. A.  Rosado's notice described that applications for appointment as Lead Plaintiff were to be made no later than August 10, 2010, stating, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i)(II), that within 60 days after publication of the notice, any person or group of persons who are members of the Class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.

7

Second, the Exchange Act establishes a procedure by which this Court should assess and appoint a lead plaintiff or group of plaintiffs. Within 90 days after publication of the notice, but after consolidation, the Exchange Act declares, the Court shall consider the motion of any class member seeking appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B).[1] The Exchange Act prompts the Court to appoint as lead plaintiff the member or members of the Class that the Court determines to be most capable of adequately representing the interests of class members. *Id.* In determining the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)   has either filed the complaint or made a motion in response to a notice. . .
>
> (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

Once it orders consolidation, therefore, this Court must assess each movant's request for appointment as lead plaintiff and determine which is most adequate at this stage to represent the interests of the Class.

---

[1] While establishing a firm deadline of 90 days for a court to rule on a lead plaintiff determination, the Exchange Act states that if plaintiffs filed more than one class action, courts should not appoint a lead plaintiff until after they consolidate the actions. 15 U.S.C. §78u-4(a)(3)(B)(ii).

### 2. Movants Satisfy The Lead Plaintiff Requirements of the Exchange Act

#### (a) Movants Have Complied With The Threshold Exchange Act Lead Plaintiff Requirements

To serve as lead plaintiff, a member of the putative class must comply with two, threshold requirements. First, a movant must timely move for his or her appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa). As noted above, notice to the class was published on June 11, 2010. As such, the deadline for motions seeking appointment as lead plaintiff is August 10, 2010. Movants have satisfied that initial requirement for serving as lead plaintiff, filing on or before August 10, 2010 their motion for consolidation, for their appointment as co-lead counsel and for approval of their selection as co-lead counsel for the Class.

Next, the Exchange Act requires a movant, seeking to serve as a class representative, to submit a sworn certification, attesting to certain facts such as the person's willingness to serve as a class representative. *See* 15 U.S.C. §78u-4(a)(2)(A). Complying with that mandate, Movants executed and have filed with this Motion the requisite certifications, stating, among other things, that they have reviewed a complaint in this matter and that they are willing to serve as representative parties on behalf of persons who purchased China North shares during the Class Period. *See* Faruqi Decl., Exhibit B. In addition, Movants have detailed their purchases and sales of China North common stock during the Class Period, attested that they will accept no payment for serving as a class representative beyond their pro rata share of any recovery, and declared that they have not sought to serve as a representative party in any class action during the past three years. *Id.* Movants have, therefore, complied with the Exchange Act's representative plaintiff certification requirement.

By virtue of having both timely moved and submitted an appropriate certification, Movants have satisfied the Exchange Act's threshold lead plaintiff requirements.

### (b) Movants Have The Largest Financial Interest In The Relief Sought By The Class

Having complied with the threshold lead plaintiff requirements, Movants turn to the Exchange Act's substantive requirements by which this Court should assess their application for appointment as lead plaintiffs. According to the Exchange Act, the Court shall appoint as lead plaintiff(s) the class member or members who, "in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

As evidenced by the accompanying signed certifications, during the Class Period, Movants purchased and/or acquired shares of China North. Based on those Class Period trades, Movants suffered combined collective losses of $32,204.86 as a direct and proximate result of Defendants' misconduct. *See* Transaction Charts of Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore, Faruqi Decl., Exhibit C. To their knowledge, therefore, Movants Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore have the largest financial interest in this relief sought in these Related Actions. Movants, therefore, satisfy the largest interest requirement of the Exchange Act's lead plaintiff provisions.

### (c) Movants Otherwise Satisfy Rule 23

In addition to demonstrating that they have the largest financial interest in the outcome of the Related Actions, however, Movants must also satisfy the necessary elements of Fed. R. Civ. P. 23. According to 15 U.S.C. §78u-4(a)(3)(B)(iii), a would-be lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." This Court need not analyze the Rule 23 elements as closely at this stage of the proceeding as it will at

the class certification stage.  *See In re: ESPEED, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005) (citations omitted).

Rather, of Rule 23(a)'s four prerequisites of numerosity, commonality, typicality and adequacy, a prospective lead plaintiff need only demonstrate that its claims are typical of the class and that it will adequately represent the class.  *Id.*; *see also In re Oxford Health Plans, Inc. Sec Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998).  Consequently in deciding a motion for appointment as lead plaintiff, the Court should focus its inquiries on the typicality and adequacy elements of Rule 23(a) and defer examination of the remaining requirements until the lead plaintiffs move for class certification.  In this case, Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

### (i)      Movants' Claims Are Typical Of the Claims of the Class

The typicality requirement of Rule 23(a) is satisfied "where the claims arise from the same conduct from which the other class members' claims and injuries arise."  *Espeed*, 232 F.R.D. at 102 (citing *In re Initial Public Offering Sec. Litig.*, 214 F.R.D. 117, 121 (S.D.N.Y 2002)).  Movants seek to represent a Class of purchasers of the Company's securities, including call options and common stock who have identical, non-competing and non-conflicting interests. Movants satisfy the typicality requirements, because they: (i) purchased China North securities during the Class Period, (ii) at prices artificially inflated by virtue of defendants' failure to disclose material information they were duty bound to disclose, and (iii) suffered damages thereby.  Other members of the Class have made and will make virtually identical claims. Accordingly, because the claims asserted by Movants arise "from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same

11

legal theory" the typicality element of Rule 23(a) is satisfied. *Id.* (citing *In re: Oxford*, 182 F.R.D. at 50).

### (ii) Movants Will Fairly And Adequately Represent The Interests Of The Class

In addition to their claims being typical of the claims of the Class, to be appointed lead plaintiffs, Movants must show that they will adequately represent the Class. Under Rule 23(a)(4) the representative party must "fairly and adequately protect the interests of the class." In the lead plaintiff context, a class member seeking appointment must show that it has no interests antagonistic to those of the class and that it has retained adequate counsel. *Espeed*, 232 F.R.D. at 103. Here, Movants are adequate representatives of the Class. As evidenced by the injury they suffered, acquiring the Company's common stock at prices allegedly artificially inflated by Defendants' violations of the federal securities laws, Movants' interests are clearly aligned with the members of the Class. Further, no evidence exists of any antagonism between Movants' interests and those of the other members of the Class. In addition, as shown below, Movants' proposed Co-Lead Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner.

Not only do Movants satisfy the threshold requirements of the Exchange Act, therefore, but they are also otherwise qualified to serve as Lead Plaintiffs for the Class. As such, this Court should appoint Movants Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore as Lead Plaintiffs for the Class.

### C. The Court Should Approve Movants' Choice of Co-Lead Counsel

Lastly, the Exchange Act provides that the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. 15 U.S.C. §78u-4(a)(3)(B)(v). Movants have selected and retained the firms of Faruqi & Faruqi, LLP and Ryan

& Maniskas, LLP to serve the Class as Co-Lead Counsel. As detailed in the attached firm resumes, Faruqi & Faruqi, LLP and Ryan & Maniskas, LLP have extensive experience in prosecuting complex class actions, including shareholder and securities class actions and have obtained excellent recoveries on behalf of defrauded investors. *See* Faruqi Decl., Exs. D and E. Thus, the Court may be confident that the Class will receive the highest caliber of legal representation.

Because there is nothing to suggest that Movants or the counsel they have selected will not fairly and adequately represent the Class, this Court should approve Movants' selection of Faruqi & Faruqi, LLP and Ryan & Maniskas, LLP as Co-Lead Counsel.

## V. CONCLUSION

For all the foregoing reasons, Movants respectfully request that the Court: (i) consolidate the Related Actions for all pretrial purposes; (ii) appoint Movants Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore as Lead Plaintiffs for the Related Actions; and (iii) approve Movants' selection of Faruqi & Faruqi, LLP and Ryan & Maniskas, LLP as Co-Lead Counsel for the Class.

Dated: August 10, 2010                                    Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: */s/ Lubna Faruqi*
    Lubna Faruqi (NF-8409)
    Jamie R. Mogil (JM-9108)
369 Lexington Avenue, 10th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

**RYAN & MANISKAS, LLP**
Katharine M. Ryan, Esquire
Richard A. Maniskas, Esquire
995 Old Eagle School Rd., Ste. 311
Wayne, PA 19087
Telephone: (484) 588-5516

*Attorneys for Movants Christine Bauman, Julian J. Aude, Darr Barshis and Craig Moore*

14