**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————x
In re CHINA NORTH EAST PETROLEUM HOLDINGS  )      10-cv-04577-MGC
LIMITED SECURITIES LITIGATION              )
                                                  )      ECF Case
THIS DOCUMENT RELATES TO:           )
ALL ACTIONS                          )
                                                  )
—————————————————————x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ROBERT C. BRUCE'S MOTION TO DISMISS

DEBEVOISE & PLIMPTON LLP

Edwin G. Schallert
Katherine H. Worden
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)
egschall@debevoise.com
khworden@debevoise.com

*Attorneys for Defendant Robert C. Bruce*

March 22, 2011

# <u>TABLE OF CONTENTS</u>

Page

PRELIMINARY STATEMENT ..................................................................................................1

THE ALLEGATIONS OF THE COMPLAINT ........................................................................3

ARGUMENT ..............................................................................................................................5

I.      The Complaint Does Not Adequately Plead a Claim Against Mr. Bruce Under Section 10(b) and Rule 10b-5 ............................................................................................................5

          A.      The Complaint Fails to Plead Scienter as to Mr. Bruce ..........................................6

                    1.      Accounting Errors and Internal Control Violations are Insufficient to Raise an Inference of Scienter ...................................................................7

                    2.      Mr. Bruce's Position is Insufficient to Raise an Inference of Scienter ........................................................................................................9

                    3.      The Retention of Jimmy C.H. Cheung & Co. As The Company's Auditor Does Not Create an Inference of Scienter ...................................10

                    4.      Even Considering its Allegations Together, the Complaint Does Not Raise a Strong Inference of Scienter......................................................11

          B.      The Allegations of the Complaint Undercut Any Inference of Scienter as to Mr. Bruce ....................................................................................................12

II.     The Complaint Does Not State a Section 20(a) Claim Against Mr. Bruce ......................13

CONCLUSION............................................................................................................................15

i

# TABLE OF AUTHORITIES

CASES

*380544 Canada, Inc. v. Aspen Tech, Inc.*, 544 F.Supp.2d 199 (S.D.N.Y. 2008) ...........................8

*ATSI Commnc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ..............................1, 6, 13

*Chill v. General Elec. Co.*, 101 F.3d 263 (2d Cir. 1996)..................................................7

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982) .........................................3

*Goplen v. 51 Job, Inc.*, 453 F.Supp.2d 759 (S.D.N.Y. 2006) ...........................................8

*Griffin v. McNiff*, 744 F. Supp. 1237 (S.D.N.Y. 1990) .............................................2, 13

*Gurfein v. Ameritrade, Inc.*, 411 F.Supp.2d 416 (S.D.N.Y. 2006).....................................13

*In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, 03 MD 1529, 2007 WL
2615928 (S.D.N.Y. Sept. 10, 2007).........................................................................10

*In re BISYS Sec. Litig.*, 397 F.Supp.2d 430 (S.D.N.Y. 2005)..........................................11

*In re Global Crossing, Ltd. Sec. Litig.*, 02 Civ. 910, 2005 WL 1907005 (S.D.N.Y. Aug. 8,
2005) .........................................................................................................14

*In re J.P. Morgan Chase Sec. Liti.*, 363 F.Supp.2d 595 (S.D.N.Y. 2005)..........................8

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006)...........10

*In re MBIA, Inc., Sec. Litig.*, 700 F.Supp.2d 566 (S.D.N.Y. 2010) ..................................14

*In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510 (S.D.N.Y. 2009) ......................6, 10

*In re UBS Auction Rate Sec. Litig.*, 08 cv 2967, 2009 WL 860812 (S.D.N.Y. 2009) .............14

*Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392 (S.D.N.Y. 2007) .......................................15

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001)..........................................................6

*Kas v. Chase Manhattan Bank, N.A.*, 90-cv-44, 1990 WL 113185 (S.D.N.Y. July 30,
1990) .........................................................................................................13

*Kramer v. Time Warner Inc.*, 937 F.2d 767 (2d Cir. 1991).............................................3

*Malin v. XL Capital, Ltd.*, 312 F. App'x 400 (2d Cir. 2009)...........................................11

*O'Brien v. Price Waterhouse*, 740 F.Supp. 276 (S.D.N.Y. 1990) ...................................9

ii

*Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer holdings, Inc.*, 1:08-cv-01041, 2011 WL 338865 (S.D. Ind. Jan. 28, 2011)............................................................13

*Plumbers & Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp.2d 287 (S.D.N.Y. 2010) ............................................1, 8, 10

*PR Diamonds, Inc. v. Chandler*, 364 F.3d 671 (6th Cir. 2004) ....................................13

*Rabhari v. Oros*, 732 F.Supp.2d 367 (S.D.N.Y. 2010)..............................................7, 10

*Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979) ....................................................6

*Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 96 civ 3231, 2001 WL 396521 (S.D.N.Y. Apr. 19, 2001)................................................................................................4, 14

*South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98 (2d Cir. 2009) ........12

*Stephenson v. Citco Group Ltd.*, 700 F.Supp.2d 599 (S.D.N.Y. 2010) ...........................7

*Stevelman v. Alias Research, Inc.*, 174 F.3d 79 (2d Cir. 1999) ........................................8

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008) .....................5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) .......................2, 6, 12

*W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717 (2d Cir. 2009) ...............7

STATUTES

15 U.S.C. § 78u-4(b)(2) ...............................................................................................6, 14

Securities Exchange Act of 1934 § 10, 15 U.S.C. § 78j.........................2, 3, 5, 6, 13, 14

Securities Exchange Act of 1934 § 20, 15 U.S.C. § 78t....................................13, 14, 15

OTHER AUTHORITIES

Fed. R. Civ. P. 9.............................................................................................................1, 6

SEC Regulation S-K, Item 407, 17 C.F.R § 229.407 . ....................................................9

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 .........................................................................5

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————x
In re CHINA NORTH EAST PETROLEUM HOLDINGS  )        10-cv-04577-MGC
LIMITED SECURITIES LITIGATION                         )
                                                                          )        ECF Case
THIS DOCUMENT RELATES TO:                        )
ALL ACTIONS                                                   )
                                                                          )
—————————————————————x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT ROBERT C. BRUCE'S MOTION TO DISMISS

Defendant Robert C. Bruce submits this memorandum in support of his motion to dismiss

the Consolidated Class Action Complaint (the "Complaint").  Mr. Bruce is a former director and

chair of the Audit Committee of China North East Petroleum Holdings Limited ("China North").

### PRELIMINARY STATEMENT

The Complaint against Mr. Bruce should be dismissed for failure to state with

particularity facts giving rise to a strong inference of scienter, as required by the Private

Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b) of the Federal Rules of Civil

Procedure.  To plead scienter, plaintiff must allege facts that show either (a) Mr. Bruce's "motive

and opportunity" to commit fraud or (b) strong circumstantial evidence of Mr. Bruce's

"conscious misbehavior or recklessness."  *ATSI Commnc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d

87, 99 (2d Cir. 2007).  The Complaint does not even attempt to satisfy the "motive and

opportunity" prong, and its allegations are insufficient as a matter of law to meet the second

prong.  For example, the Complaint refers to Mr. Bruce's role on the Audit Committee, Compl.

¶¶ 109, 118, even though "Courts in this Circuit have long held that accusations founded on

nothing more than a defendant's corporate position are entitled to no weight."  *Plumbers &*

1

*Steamfitters Local 773 Pension Fund v. Canadian Imperial Bank of Commerce*, 694 F. Supp.2d 287, 300 (S.D.N.Y. 2010).

Plaintiff's allegations against Mr. Bruce are additionally defective because, "rather than providing facts to buttress [its] allegations of scienter," the Complaint instead "allege[s] facts which substantially undercut the strength of any inference of scienter that might be drawn from [defendant's] conduct." *Griffin v. McNiff*, 744 F. Supp. 1237, 1249 (S.D.N.Y. 1990), *aff'd,* 996 F.2d 303 (2d Cir. 1993). The Complaint alleges that Mr. Bruce commissioned a forensic audit of China North's bank accounts, urged the board of directors to take "additional steps to investigate" questions raised by the forensic audit, recommended that the company initiate a self-reporting process to the SEC, and resigned when the board explained that it would not undertake additional investigation. Compl. ¶¶ 12, 34, 99, 103, Ex. A. The Court "must consider, not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Several of the Complaint's alleged facts support an "opposing inference of nonfraudulent intent." *Id.*

These deficiencies require dismissal of the Complaint's claim against Mr. Bruce under section 10(b) of the Securities Exchange Act of 1934, as well as the related claim under section 20(a).[1]

---

[1]   Mr. Bruce also joins in and incorporates by reference all of the grounds for dismissal set forth in China North's motion to dismiss.

2

## THE ALLEGATIONS OF THE COMPLAINT[2]

The Complaint's claims of section 10(b) violations are based on allegations that China North (i) misstated its proved oil reserves that had been attested to by an independent oil and gas firm, Compl. ¶ 4a; (ii) failed to account for certain warrants in accordance with GAAP, Compl. ¶ 4b; (iii) as a result of the foregoing, overstated earnings, Compl. ¶¶ 4c, 4d; and (iv) "[m]isrepresented the state of the Company's internal controls."  Compl. ¶4e.  The Complaint names nine defendants and repeatedly lumps them together, making little attempt to specify the role of each defendant in the alleged fraud.  *See, e.g.,* Compl. ¶¶ 105, 107, 110, 119, 130, 132, 135, 136.

Much of the Complaint does not address Mr. Bruce but instead consists of irrelevant atmospherics or pejorative characterizations of alleged facts.  For example, the Complaint sets the stage by alleging that two relatives of China North's CEO served as directors and that the company's Chief Financial Officer was "merely 27 years old during the Class Period."  Compl. ¶ 3.  The Complaint fails to note that these facts were expressly disclosed in China North's public filings with the SEC during the class period.  *See* Worden Decl., Ex. 2; Ex. 3, p. 27–28.  Facts that a company disclosed to the markets do nothing to advance a claim of securities fraud.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 778 (2d Cir. 1991) (finding "no hint of any intent to deceive" where there was accurate disclosure); *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111,

---

[2]     For purposes of this motion, the Complaint's factual allegations are taken as true, except to the extent those allegations are contradicted by matters of which this Court may take judicial notice.  The Court may take notice of the full content of (i) documents partially quoted in the complaint, *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996), and (ii) China North's public disclosures, whether or not cited or quoted in the Complaint, *see, e.g., Leykin v. AT&T Corp.*, 423 F. Supp. 2d 229, 237 (S.D.N.Y. 2006) (citing *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991)), *aff'd*, 216 F. App'x 14 (2d. Cir. 2007).

3

116-17 (2d Cir. 1982) (finding "plaintiff has alleged no particulars of fraudulent concealment" where facts at issue were adequately disclosed).

In a similar vein, the Complaint impermissibly adds an inflammatory "spin" to facts that China North disclosed.  For instance, in May 2010, the company disclosed that a forensic audit preliminarily found cash transfers between China North's bank accounts and those of the CEO and a director, some of which were used to pay company expenses, with "no indication that any of the funds were used for personal purposes."  Compl. ¶ 98; Worden Decl., Ex. 4.  In plaintiff's translation, the CEO and director "pillaged China North's coffers."  Compl. ¶ 32; *see also* ¶ 40 ("pilfering").  While the facts alleged in a complaint are to be credited, the pejorative characterizations of those facts deserve no weight.  *See Silva Run Worldwide Ltd. v. Gaming Lottery Corp.*, 96 civ 3231, 2001 WL 396521, at *1 (S.D.N.Y. Apr. 19, 2001).

<u>*The Allegations Against Mr. Bruce*</u>

Mr. Bruce joined China North as a Director and as the chair of its Audit Committee in May 2008.  Compl. ¶ 25.  The only alleged misstatements attributed to Mr. Bruce in the entire Complaint are those contained in China North's 2008 10-K Report, which Mr. Bruce signed.  Compl. ¶¶ 25, 73.

The allegations of scienter against Mr. Bruce are skimpy.  The Complaint contains a section labeled "Scienter" with a hodgepodge of allegations like Mr. Bruce's membership on the Audit Committee, China North's retention of an independent auditor who was a so-called "collaborator in the fraud," improper accounting, and Mr. Bruce's designation as a "financial expert."  Compl. ¶¶ 107-119.  Plaintiff fails to explain, however, how these facts demonstrate Mr. Bruce's scienter.  The Complaint contains a conclusory allegation that Mr. Bruce was "reckless in allowing the Company to commit such flagrant accounting errors on his watch,"

Compl. ¶ 118; *see also* Compl. ¶ 102, without ever pointing to specific instances of Mr. Bruce's "recklessness."

At the same time, the Complaint alleges facts that negate Mr. Bruce's scienter.  On February 23, 2010, China North publicly announced that it would have to revise previously issued financial statements for 2008 and 2009.  Compl. ¶ 86.  This is the earliest date alleged in the Complaint that *anyone* was aware of the need to restate China North's financials.  On March 8, 2010, China North "provid[ed] further details" regarding the impact of its restatements.  Compl. ¶ 88.  That same day, "for the first time," China North disclosed "uncertainties" regarding its internal controls.  Compl. ¶ 90.  The Complaint contains no allegations that *anyone* was aware of these "uncertainties" prior to March 8.  On April 19, 2010, the Audit Committee, headed by Mr. Bruce, retained the services of John Lees Associates Limited of Hong Kong ("JLA") to conduct a forensic audit of China North's bank accounts.  Compl. ¶ 98.  Although the final JLA report revealed "no evidence . . . to indicate that funds were misappropriated, stolen or otherwise misused," Mr. Bruce urged China North's board to conduct further investigations to answer "important questions" regarding potential misstatements China North may have made and to "affirmatively attest to compliance with the FCPA."  Compl., Ex. A.  When the acting chairman of the board rejected Mr. Bruce's recommendation for further investigation, Mr. Bruce resigned from the board of directors.  Compl. ¶ 36.

## ARGUMENT

## I.     The Complaint Does Not Adequately Plead a Claim Against Mr. Bruce Under Section 10(b) and Rule 10b-5

To state a claim under Section 10(b) and Rule 10b-5, plaintiffs must allege, among other things, that the defendant made a material misrepresentation or omission and that the defendant acted with scienter.  *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148, 157

(2008); 15 U.S.C. § 78j(b).  The PSLRA requires that a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  The PSLRA's requirement echoes the "stringent" formulation long applied by the Second Circuit to the heightened standard for pleading fraud under Rule 9(b) of the Federal Rules of Civil Procedure.  *See Tellabs*, 551 U.S. at 320 (citing *Ross v. A.H. Robins Co.*, 607 F.2d 545, 558 (2d Cir. 1979)).

### A.   The Complaint Fails to Plead Scienter as to Mr. Bruce

To plead scienter, a plaintiff must allege particularized facts giving rise to a "cogent and compelling" inference that the defendant acted with "intent to deceive, manipulate or defraud." *Tellabs,* 551 U.S. at 319, 324.  The Complaint's factual allegations and matters of which the court may take judicial notice, considered collectively, must raise an inference of the defendant's scienter that is at least as plausible as competing, non-fraudulent inferences.  *Id.* at 323–24.  In this Circuit, the required strong inference of scienter may be established by alleging facts that show either (a) that a defendant had the "motive and opportunity" to commit fraud, or (b) strong circumstantial evidence of a defendant's "conscious misbehavior or recklessness."  *See ATSI Commc'ns,*  493 F.3d at 99.

Where, as here, plaintiffs do not even attempt to allege facts about a defendant's motive to commit fraud, their burden of alleging strong circumstantial evidence of conscious misbehavior or recklessness is "correspondingly greater."  *See Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  In considering whether a complaint pleads strong circumstantial evidence of conscious misbehavior or recklessness, "Second Circuit cases uniformly rely on allegations that [1] *specific* contradictory information was available to the defendants [2] *at the same time* they made their misleading statements."  *In re PXRE Group, Ltd., Sec. Litig.*, 600 F. Supp. 2d 510,

536 (S.D.N.Y. 2009) (emphasis in original) (citation omitted), *aff'd sub nom. Condra v. PXRE Group Ltd.*, 09-cv-1370, 2009 WL 4893719 (2d Cir. Dec. 21, 2009).  The Complaint falls far short of meeting that standard.

### 1. Accounting Errors and Internal Control Violations are Insufficient to Raise an Inference of Scienter

Plaintiff points to the alleged accounting errors, internal control violations, and the size of China North's restatements as evidence of scienter.  Compl. ¶¶ 112-13, 119.  Each of these allegations is simply a variation on the assertion that the fact of an accounting error gives rise to an inference of scienter.  The Second Circuit has repeatedly rejected such an inference.  *See, e.g., Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir. 1996) ("Allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."); *see also W. Va. Inv. Mgmt. Bd. v. Doral Fin. Corp.*, 344 F. App'x 717, 720 (2d Cir. 2009) (Failure "to comply with Generally Accepted Accounting Practices or other such irregularities are insufficient to establish recklessness.  To give rise to the state of mind required, these allegations must be coupled with evidence of corresponding fraudulent intent.") (citation omitted).

Without more, allegations of accounting errors are indicative of, at most, a violation of the duty of care – not scienter.  *See Rabhari v. Oros*, 732 F. Supp. 2d 367, 385-86 (S.D.N.Y. 2010).  Similarly, Mr. Bruce's alleged failure to prevent violations of China North's internal controls is not indicative of scienter.  *See W. Va. Inv. Mgmt. Bd.*,  344 F. App'x at 720 ("In the accounting context, failure 'to identify problems with the defendant company's internal controls and accounting practices does not constitute reckless conduct'") (citation omitted).  This is particularly true where, as here, there is no allegation that Mr. Bruce was directly involved in the auditing of China North's internal controls.  *See Stephenson v. Citco Group Ltd.*, 700 F.Supp.2d

599, 623 (S.D.N.Y. 2010) ("only those red flags that [defendant] is alleged to have known of, or that are so obvious that [defendant] must have known of them, can support an inference of intent")

Just as accounting errors are not sufficient to create an inference of scienter, neither is the size or fact of a restatement. *See Plumbers & Steamfitters Local*, 694 F. Supp. 2d at 302 ("Because the 'size of an alleged fraud [in this case $5.65 billion] alone does not create an inference of scienter,' Plaintiff's repeated allegation concerning the magnitude of the write-downs is insufficient to plead scienter.") (citation omitted); *380544 Canada, Inc. v. Aspen Tech, Inc.*, 544 F.Supp.2d 199, 222 (S.D.N.Y. 2008) ("[T]he mere fact that a company has restated financials is insufficient to support scienter.").

It is not enough to point to China North's restatements and hope that this Court draws the inference that the earlier financial statements were fraudulent and that Mr. Bruce was engaged in such fraud. On the contrary, this type of "fraud by hindsight" pleading has long been rejected in this Circuit. *See Stevelman v. Alias Research, Inc.*, 174 F.3d 79, 84 (2d Cir. 1999) ("Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud.") (citation omitted); *Goplen v. 51 Job, Inc.*, 453 F.Supp.2d 759, 767–68 (S.D.N.Y. 2006) (dismissing securities fraud class action and holding that mere fact that revenues were misstated does not prove that financial statements were fraudulent); *In re J.P. Morgan Chase Sec. Litig.*, 363 F.Supp.2d 595, 624 (S.D.N.Y. 2005) ("Plaintiff must allege facts indicating that the statements were false and misleading at the time they were made, because fraud cannot be pled by hindsight. . . .  [P]laintiffs must supply some factual basis for the allegation that the defendants knew or should have known that the statements were false at some point during the time period alleged.") (quotation marks and citations omitted).

### 2.      Mr. Bruce's Position is Insufficient to Raise an Inference of Scienter

The allegation that Mr. Bruce was the chair of the Audit Committee and an "accounting expert" who had an "enhanced" obligation to "familiarize [himself] with all aspects of the Company's operations and financial results" does nothing to create a strong inference of scienter. Compl. ¶¶ 108-09.

First, Plaintiffs' allegation that Mr. Bruce's duty was "enhanced" as a result of his position on the board and his designation as an "expert" is meritless.  Under Item 407(d)(5)(iv) of Regulation S-K of the Securities Exchange Act:

> A person who is determined to be an audit committee financial expert will not be deemed an *expert* for any purpose . . . as a result of being designated or identified as an audit committee financial expert. . . . The designation or identification of a person as an audit committee financial expert pursuant to this item does not impose on such person any duties, obligations or liability that are greater than the duties, obligations and liability imposed on such person as a member of the audit committee or board of directors in the absence of such designation or identification.

Further, an allegation of accounting "expertise" in and of itself is insufficient to create a strong inference of scienter.  *See, e.g., O'Brien v. Price Waterhouse*, 740 F.Supp. 276, 282 (S.D.N.Y. 1990) ("Conclusory allegations of an accountant defendant's skill or experience does not satisfy the particularity requirements of Rule 9(b), unless it is specifically shown how or why the expert should have believed the projections to be inaccurate."), *aff'd sub nom. O'Brien v. Nat'l Prop. Analysis Partners*, 936 F.2d 674 (2d Cir. 1991) .

Second, Mr. Bruce's position does not give rise to an inference of scienter.  "It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter."  *PXRE Group*, 600 F. Supp. 2d at 545 (quoting *In re Sotheby's Holdings, Inc.*, No. 00 Civ. 1041 (DLC), 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000)), *aff'd*, 2009 WL

9

4893719; *see also Plumbers & Steamfitters Local*, 694 F. Supp. 2d at 300 ("Courts in this Circuit have long held that accusations founded on nothing more than a defendant's corporate position are entitled to no weight."); *Rahbari*, 732 F.Supp.2d at 386 (S.D.N.Y. 2010) (finding that the mere fact that members of corporate board of directors served as members of audit committee, did not raise an inference of scienter in a derivate action); *In re Adelphia Commc'ns Corp. Sec. and Derivative Litig.*, 03 MD 1529, 2007 WL 2615928, at *5 (S.D.N.Y. Sept. 10, 2007) (refusing to "infer, from the fact that the [defendants] served as outside directors or audit committee members, that Plaintiffs' burden of pleading scienter satisfies itself automatically"), *adhered to on reconsideration by*, 542 F.Supp.2d 266 (S.D.N.Y. 2008). Indeed, general allegations against non-executive directors have been repeatedly rejected. *See, e.g., In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 487 (S.D.N.Y. 2006) ("courts have been hesitant to find a strong inference of audit committee members' scienter in cases providing general allegations of circumstantial evidence").

### 3.    The Retention of Jimmy C.H. Cheung & Co. As The Company's Auditor Does Not Create an Inference of Scienter

The Complaint alleges that the retention of Jimmy C. H. Cheung & Co. ("Jimmy Cheung") as China North's auditor creates an inference of scienter because "[t]he [Jimmy Cheung] firm has a long history of serving U.S. listed companies for relatively short durations and either being dismissed or resigning amid rumors of fraudulent conduct." Compl. ¶ 110.

The Complaint, however, fails to allege any improper conduct on the part of Jimmy Cheung or, importantly, Mr. Bruce's awareness of such conduct. Without such particularized allegations, it is not clear how Jimmy Cheung was a "collaborator in the fraud," Compl. ¶ 110, or how the retention of Jimmy Cheung is evidence of any defendant's scienter. Moreover, the Complaint fails to allege how the retention of Jimmy Cheung creates a strong inference that Mr.

Bruce knew that any statements contained in China North's 2008 10-K were false or misleading. In fact, Jimmy Cheung was listed with the Public Company Accounting Oversight Board ("PCAOB") during the class period and the PCAOB did not issue a "critical" report of Jimmy Cheung until October 1, 2009, after China North had retained the firm and, notably, after the filing of the 2008 10-K.  *See e.g.*, Worden Decl., Exs. 5 & 6.

**4.      Even Considering its Allegations Together, the Complaint Does Not Raise a Strong Inference of Scienter**

The Second Circuit has made clear that a plaintiff may not combine a laundry list of inadequate allegations of scienter in the hope that they will somehow add up to one sufficient allegation of scienter.  *Malin v. XL Capital, Ltd.*, 312 F. App'x 400, 402 (2d Cir. 2009) ("having concluded that none of plaintiffs' allegations showed even a weak inference of scienter, there is no logical way that the District Court could then have determined that the combined effect of the allegations would form a *strong* inference of scienter.") (emphasis supplied); *In re BISYS Sec. Litig.*, 397 F.Supp.2d 430, 449 (S.D.N.Y. 2005) ("Nor do plaintiffs save their claims from dismissal by arguing that their various allegations of motive and opportunity and conscious misbehavior or recklessness – though insufficient when considered in isolation – are somehow adequate when considered together.").  None of the allegations in the Complaint raise an inference of scienter in isolation; nor does combining them turn lead into gold.

11

**B.      The Allegations of the Complaint Undercut Any Inference of Scienter as to Mr. Bruce**

The Court "must consider 'not only inferences urged by the plaintiff, . . . but also competing inferences rationally drawn from the facts alleged.  An inference of fraudulent intent may be plausible, yet less cogent than other, nonculpable explanations for the defendant's conduct.'"  *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 111 (2d Cir. 2009) (quoting *Tellabs,* 551 U.S. at 319).  The facts alleged by plaintiff create an inference that Mr. Bruce acted in good faith in carrying out his responsibilities as a director and had no knowledge of the falsity of any alleged misstatement at the time it was made.

On February 23, 2010, China North announced that it would have to restate previously issued financial statements for 2008 and 2009.  Compl. ¶ 86.  That is the earliest time alleged that *anyone* knew of any misstatements.  In the subsequent months, according to the Complaint, Mr. Bruce "headed" a forensic audit conducted by John Lees & Associates ("JLA").  Compl. ¶ 9. JLA issued a report of its findings on July 10, 2010.  Compl. ¶ 12.  On July 22, 2010, Mr. Bruce wrote a letter to the board of directors in response to the JLA report, in which he urged the board to "'take additional steps to investigate questions raised by the JLA report' regarding:  1) whether the Company's previously filed financial reports and associated financial statements were materially correct under GAAP (aside from those issues already identified in the restatement); and 2) whether the Company made payments to government officials in violation of the FCPA."  Compl. ¶ 34, Ex. A.  When the acting board chair rejected Mr. Bruce's recommendation for further investigation, Mr. Bruce resigned from the board of directors. Compl. ¶ 36.

These allegations of Mr. Bruce's attempts to discover and correct any prior misstatements made by China North lean heavily in favor of an inference that Mr. Bruce was

12

working in good faith to represent the legitimate interests of the shareholders and, therefore, undercut any inference of scienter. *Griffin*, 744 F.Supp. at 1249 (finding that defendant auditor's decision to withdraw its reports and tax opinions on suspicion of wrongdoing "undercut the strength of any inference of scienter."), *aff'd*, 996 F.2d 303; *Kas v. Chase Manhattan Bank, N.A.*, 90-cv-44 (KMW), 1990 WL 113185, at *3 (S.D.N.Y. July 30, 1990); *see also PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 691 (6th Cir. 2004) (finding allegation that defendants hired an outside consultant to investigate accounting problems "[i]f anything, . . . counters an inference that the [defendants] were trying to keep the alleged accounting problems hidden from view."); *Plumbers and Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.*, 1:08:-cv-01041, 2011 WL 338865, at *22 (S.D. Ind. Jan. 28, 2011) (finding that defendant's investigation into an alleged problem and timely disclosure of the results of that investigation create a strong inference against scienter).

## II. The Complaint Does Not State a Section 20(a) Claim Against Mr. Bruce

To plead a Section 20(a) claim, plaintiff must allege (1) a primary violation of the 1934 Act; (2) control of the primary violator by the controlling defendant; and (3) the defendant's culpability in the fraud perpetrated by the controlled person. *ATSI Commc'ns, Inc.*, 493 F.3d 87 at 108. The Complaint fails to plead all three requirements against Mr. Bruce, and the Section 20(a) claim should therefore be dismissed.

First, the Complaint fails to state a primary violation of section 10(b) for the reasons discussed in both Section I, and for those listed in the Company's Motion to Dismiss. Therefore, the Section 20(a) claim against Mr. Bruce must be dismissed. *Gurfein v. Ameritrade, Inc.*, 411 F.Supp.2d 416, 427 (S.D.N.Y. 2006) ("In the absence of a primary violation, a plaintiff cannot

13

state a claim for controlling person liability under § 20(a) of the Securities Exchange Act.")
(citation omitted).

Second, the Complaint does not allege with any specificity that Mr. Bruce was a
controlling person.  Count III of the Complaint, alleging a Section 20(a) violation, lumps all of
the individual defendants together and alleges that "Each of the Individual Defendants…acted as
a controlling person of China North…[b]y reason of their senior management positions and/or
being directors of China North…." Compl. ¶146.  While the Complaint alleges that Mr. Bruce
was the chair of the Audit Committee, this allegation is insufficient to satisfy the rigorous
pleading standards of the PSLRA.  *See In re Global Crossing, Ltd. Sec. Litig.*, 02 Civ. 910, 2005
WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) ("Because the power to direct the management
and policies of a person must be a real, de facto power and not just de jure[,] officer or director
status alone does not constitute control.") (citations and quotations omitted); *see also Silva Run
Worldwide Ltd. v. Gaming Lottery Corp.*, 96 Civ. 3231, 2001 WL 396521, at *7 (dismissing
section 20(a) claim where there were "no allegations showing that [individual defendant] had
possession, direct or indirect, of the power to direct or cause the direction of the management and
policies of [corporation] and therefore was a control person").

Third, the Section 20(a) claim against Mr. Bruce also fails because the Complaint does
not adequately allege that Mr. Bruce culpably participated in any underlying securities law
violation.  To plead a Section 20(a) claim, a complaint must plead particularized facts giving rise
to a strong inference of a culpable state of mind on the part of the alleged controlling person.
See 15 U.S.C. § 78u-4(b)(2); *In re MBIA, Inc., Sec. Litig.*, 700 F.Supp.2d 566, 598 (S.D.N.Y.
2010) ("'culpable participation' is a pleading requirement to state a § 20(a) claim in the Second
Circuit"); *In re UBS Auction Rate Sec. Litig.*, 08 cv 2967, 2009 WL 860812, at *3 (S.D.N.Y.

14

2009) ("to allege control person liability under § 20(a), Plaintiffs' must allege some level of culpable participation at least approximating recklessness in the section 10(b) context") (quotation marks and citations omitted); *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 406 (S.D.N.Y. 2007) (the "weight of Second Circuit precedent favors the view that a Plaintiff plead 'culpable participation' . . . with particularity" to state a Section 20(a) claim).  As discussed in Section I, the Complaint's allegations do not support any inference, let alone a strong inference, that Mr. Bruce possessed a culpable state of mind.  Thus, the section 20(a) claim against Mr. Bruce must be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint's claims against Defendant Robert C. Bruce should be dismissed.

Dated: New York, New York
      March 22, 2010

DEBEVOISE & PLIMPTON LLP

By:

/s/ Edwin G. Schallert
Edwin G. Schallert
Katherine H. Worden
919 Third Avenue
New York, NY 10022
(212) 909-6000 (phone)
(212) 909-6836 (fax)
egschall@debevoise.com
khworden@debevoise.com

*Attorneys for Defendant Robert C. Bruce*

Of Counsel:
Jared I. Kagan

15