```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

In re                                    CONSOLIDATED AS
                                         10 Civ. 4577 (MGC)
CHINA NORTH EAST PETROLEUM HOLDINGS
LIMITED SECURITIES LITIGATION

                                         MEMORANDUM AND ORDER

----------------------------------X


APPEARANCES:


            POMERANTZ HAUDEK GROSSMAN & GROSS LLP
            Attorneys for Lead Plaintiff Acticon AG
            100 Park Avenue, 26th Floor
            New York, New York 10017

            BY: Jeremy A. Lieberman, Esq.
                Marc I. Gross, Esq.
                Shaheen Rushd, Esq.
                Anthony F. Maul, Esq.


            THE CRONE LAW GROUP
            Attorneys for Defendants China North East
             Petroleum Holdings Limited, Wang Hung Jun,
             Guizhi Ju, and Zhang Yang
            101 Montgomery Street, Suite 2650
            San Francisco, California 94104

            BY: Michael J. Coffino, Esq.
                Jaime J. Santos, Esq.


            REAVIS PARENT LEHRER LLP
            Attorneys for Defendants China North East
             Petroleum Holdings Limited, Wang Hung Jun,
             Guizhi Ju, and Zhang Yang
            41 Madison Avenue, 41st Floor
            New York, New York 10010

            BY: Lawrence Brocchini, Esq.


                         1
```

DEBEVOISE & PLIMPTON LLP
Attorneys for Defendant Robert C. Bruce
919 Third Avenue
New York, New York 10022

BY: Edwin G. Schallert, Esq.
    Jared I. Kagan, Esq.
    Katherine H. Worden, Esq.


K&L GATES LLP
Attorneys for Defendant Ralph E. Davis
 Associates, Inc.
599 Lexington Avenue
New York, New York 10022

BY: Andrew L. Morrison, Esq.


DUNN, NEAL & GERGER, L.L.P.
Attorneys for Defendant Ralph E. Davis
 Associates, Inc.
3050 Post Oak Boulevard, Suite 400
Houston, Texas 77056

BY: S. Loyd Neal, III, Esq.


**Cedarbaum, J.**

Acticon AG ("Acticon") sues as lead plaintiff of a consolidated putative class action[1] under §§ 10(b) & 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and under SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.  Defendants have filed three motions to dismiss Acticon's putative class action complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  Because Acticon

---

[1] No class has been certified.

has not suffered any economic loss, the three motions are granted.

In Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), the U.S. Supreme Court held that a plaintiff does not satisfy the economic loss element of a 10b-5 claim under a fraud-on-the-market theory simply by alleging that the plaintiff purchased securities at an inflated price. The Court reasoned that, "as a matter of pure logic, at the moment the transaction takes place, the plaintiff has suffered no loss; the inflated purchase payment is offset by ownership of a share that at that instant possesses equivalent value." Id. at 342, 125 S. Ct. at 1631 (emphasis in original). Therefore, a plaintiff must also allege that the share price "fell significantly after the truth became known." Id. at 347, 125 S. Ct. at 1634.

Since Dura, courts have held as a matter of law that a purchaser suffers no economic loss if he holds stock whose post-disclosure price has risen above the purchase price — even if that price had initially fallen after the corrective disclosure was made. For example, in Malin v. XL Capital Ltd., No. 03 Civ. 2001, 2005 WL 2146089 (D. Conn. Sept. 1, 2005), the court dismissed the complaint of purchasers who chose not to sell at a profit after the alleged disclosure. The stock price had declined in the days following the disclosure but, within sixty

3

trading days, had recovered to exceed its pre-disclosure closing price.  That post-disclosure recovery, the court held, precluded a claim for securities fraud because "a price fluctuation without any realization of an economic loss is functionally equivalent to the Supreme Court's rejection of an artificially inflated purchase price alone as an economic loss.  If the current value is commensurate to the purchase prices, there is no loss, regardless of whether the purchase price was artificially inflated."  Id. at *4; accord Ross v. Walton, 668 F. Supp. 2d 32, 43 (D.D.C. 2009) (holding that "[l]ogically, a plaintiff cannot demonstrate the amount the purchaser overpaid if the stock value rose greater than the purchase price on multiple occasions" and therefore dismissing the claim of plaintiffs who continued to hold shares whose price fell initially but several months after the disclosure had repeatedly risen above the purchase price); In re Veeco Instruments, Inc. Sec. Litig., No. 05 Civ. 10226, slip op. at 12 (S.D.N.Y. June 27, 2007) (holding that "[p]laintiffs who chose to retain their shares past the point when the stock price first recovered to the value at which the shares were purchased[] can prove no economic loss that is attributable to any of the defendants' alleged misrepresentations" and that courts "may continue to consider evidence of price recovery up until the point when the plaintiffs' damages are finally computed.")

4

In this case, Acticon purchased a total of 60,000 shares in China North East Petroleum Holdings Ltd. ("NEP") in several installments over the course of the class period.  On January 20, 2010, it purchased 2,500 shares at $9.60 per share; on January 21, 2010, it purchased 2,500 shares at $9.30 per share; on January 26, 2010, it purchased 2,500 shares at $8.35 per share; on April 19, 2010, it purchased 2,500 shares at $8.51 per share, 2,500 shares at $8.31 per share, and 5,000 shares at $8.26 per share; on May 6, 2010, it purchased 2,500 shares at $6.99 per share; on May 14, 2010, it purchased 20,000 shares at $6.75 per share, 10,000 shares at $6.65 per share, and 1,000 shares at $6.45 per share; finally, on May 17, 2010, it purchased 9,000 shares at $6.45 per share.  In all, Acticon spent $434,950 for 60,000 shares of NEP, an average of $7.25 per share.

Acticon held all 60,000 shares for months after the final allegedly corrective disclosure was made on September 1, 2010.[2] During those months, it had several opportunities to sell its shares at a profit.  On twelve days between October and November 2010, NEP stock closed at a price higher than $7.25.  Had Acticon AG chosen to sell on those post-disclosure dates, it

---

[2] Defendants contend that this statement does not qualify as a corrective disclosure.  There is no need to decide that issue, however, since Acticon has no actionable loss either way.

would have turned a profit.  Like the plaintiffs in Malin, it chose not to do so.

Notwithstanding these missed opportunities, Acticon argues that it may sue on losses that it incurred recently when it sold shares at prices far lower than those prevailing in October and November.  Between December 2010 and May 2011, Acticon sold a portion of its NEP stock at prices ranging from $3.50 to $6.33.  Yet although these sales were unquestionably at a loss, that loss cannot be imputed to any of NEP's alleged misrepresentations.  A plaintiff who forgoes a chance to sell at a profit following a corrective disclosure cannot logically ascribe a later loss to devaluation caused by the disclosure.

Thus, Acticon has not suffered any loss attributable to the misrepresentations alleged in the complaint.  Because the absence of economic loss is sufficient grounds for dismissal, I do not reach the other arguments offered by defendants in support of their respective motions.

## CONCLUSION

For the foregoing reasons, the three motions to dismiss the consolidated complaint are granted.  This disposes of the case against all defendants, and the clerk is therefore directed to close the case.

SO ORDERED.

Dated:    New York, New York
          October 6, 2011

                                        S/_____
                                           MIRIAM GOLDMAN CEDARBAUM
                                         United States District Judge