Michael J. Coffino (Admitted *Pro Hac Vice*)
Jaime J. Santos (JS-3361)
COFFINO LAW GROUP, LLP
201 Spear Street, Suite 1100
San Francisco, CA 94105
Telephone (415) 426-3530
Fax (415) 426-3531

Attorneys for Defendants
CHINA NORTH EAST PETROLEUM
HOLDINGS LIMITED, WANG HONG JUN,
GUIZHI JU and ZHANG YANG

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re China North East Petroleum Holdings Limited Securities Litigation**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**All Actions** | No. 10-CV-04577 (MGC) (THK)<br>ECF Case<br><br>**CORRECTED DECLARATION OF JAIME J. SANTOS IN SUPPORT MOTION TO PERMIT COFFINO LAW GROUP, LLP TO WITHDRAW AS COUNSEL**<br><br><u>REQUEST FOR IN CAMERA APPEARANCE</u><br><br><u>Requested Hearing Date and Time:</u><br><u>September 11, 2014 at 2:30 p.m.</u> |

### CORRECTED DECLARATION OF JAIME J. SANTOS

I, Jaime J. Santos, hereby declare as follows:

1. I am an attorney at law, licensed to practice before the United State District Court for the Southern and Eastern Districts of New York, the Northern and Eastern Districts of California, and the State Courts of New York and California. I am a partner in the law firm of Coffino Law Group, LLP ("CLG"), counsel of record for China North East Petroleum Holdings Limited ("NEP"), Wang Hong Jun, Guizhi Ju, and Zhang

Yang (together "Defendants") in this action. I make this declaration in support of the motion of Coffino Law Group to Permit Coffino Law Group, LLP to Withdraw as Counsel of Record for Defendants China North East Petroleum Holdings Limited, Wang Hong Jun, Guizhi Ju, Zhang Yang. If called upon to do so, I could and would testify competently to the matters set forth in this declaration.

2. At the end of June 2012, Michael Coffino and I left the Crone Law Group to start our own firm. We formed Coffino Law Group, LLP on July 1, 2012. Mr. Coffino and I are the only attorneys practicing at the firm.

3. On August 6, 2012, Mr. Coffino and I both filed Notices of Change of Address in this Court on behalf of Defendants.

4. On March 7, 2013, counsel for the class action plaintiffs, counsel for plaintiffs in parallel shareholder derivative actions, counsel for Defendants, and counsel for defendant Ralph E. Davis participated in mediation under the auspices of Judicial, Arbitration and Mediation Services (JAMS) with the Honorable William Cahill. A member of NEP's Litigation Committee, John Nicholls travelled from Sydney Australia, to attend the mediation in person.

5. The mediation resulted in a settlement that the parties memorialized in a Memorandum of Understanding.

6. After the March 7, 2013 mediation in Los Angeles, Mr. Coffino and I spent hundreds of hours conferring with counsel for Plaintiffs as well as co-defendants Robert Bruce and Ralph E. Davis, and drafting and revising the many settlement documents required for settlement of a class action.

7. During the course of its representation of CLG, which began on July 1, 2013, CLG has performed a substantial amount of work in connection with the following:

      a.      This litigation, *In re China Northeast Petroleum Holdings Limited,* No. 10-CV-04577 (MGC) (THK) (S.D.N.Y.) and *Acticon, A.G., Rosado, Weissman,* and appeal, *Moore v. China Northeast Petroleum Holdings Limited, et al.*, No. 11-4544-cv (2d Cir.).

      b.      The parallel Derivative Actions, *Judith Strickland v. Wang Hong Jun, et al.,* No. 10-cv-05445 (MGC) (S.D.N.Y.); *Drobner v. Wang Hong Jun, et al.*, 10-cv-06319 (MGC) (S.D.N.Y.); *Nicoln v. Wang Hong Jun, et al.*, 10-cv-06344 (MGC); and appeal, *Sherwin Drobner v. Robert C. Bruce, China North East Petroleum Holdings Limited*, No. 11-3219-cv (2d Cir.).

      c.      A 2012 civil litigation that the Securities and Exchange Commission ("SEC") brought, *United States Securities and Exchange Commission v. China Northeast Petroleum Holdings Limited, et al.*, No. 12-cv-08696 (NRB) (S.D.N.Y.).

      d.      A 12(j) administrative proceeding that the SEC brought, *In the Matter of China North East Petroleum Holdings Limited, Respondent*, File No. 3-15167.

      e.      An arbitration through International Center for Dispute Resolution that former NEP counsel commenced (the "Arbitration"), *SRZ v. China North*, ICDR Case No. 50 194 T 00228 13.

      f.      Performance of myriad tasks as outside general counsel to the Company.

8.      Our engagement agreement with NEP started on July 1, 2012 and is based on a straight hourly rate billing structure for all matters.

9.      When NEP initially engaged us in July 2012, it provided, as the written engagement letter required, an advanced fee of $50,000. As allowed under the terms of

the engagement, on October 23, 2012, we applied the advanced fee to cover its first two invoices.

10. The next and only payment NEP provided us was on February 20, 2013, again for $50,000, which was a partial invoice payment.

11. We currently still hold outstanding invoices for December 2012 and January, February, March, April, May, June, July and August 2013. The total outstanding exceeds $300,000, which excludes the impending September invoice that totals approximately $30,000.

12. The amount owed us in fees and costs for work performed in this case alone is over $82,000. We are a small firm and simply are unable to continue working without payment or any reasonable prospects for payment.

13. Each time NEP must appear before the Court, we outlay significant firm funds that for travel expenses from California to New York.

14. While the pace of this litigation has slowed somewhat since finalization of the settlement documents, we anticipate that it will cost tens of thousands of dollars to represent NEP during the continuing settlement stage of this case.

15. If NEP fails to consummate the settlement, and the case is not stayed, but is launched into discovery and depositions, costs, especially given that nearly all of NEP's documents and witnesses are located in the Peoples Republic of China, would be enormous, would require costly travel time, additional manpower, and litigation vendor support.

16. There is no basis to conclude, at this time, that NEP can or would pay for these costs.

17. The burden of continued representation in these circumstances would imperil our law firm.

18. Our efforts to obtain payment during this period have been incessant. We have sent over 30 separate written communications to individual board members, the company Litigation Committee, the full board, or the Company's bookkeeper and translator with requests for payment. We have also had countless telephone communications on this subject.

19. On August 30, NEP promised full payment for all outstanding invoices the first week of September.

20. On September 4, NEP's U.S. bookkeeper requested that we re-send all outstanding invoices to the Board. We did. The bookkeeper advised us that once the Board received them, we could expect payment. We did not receive any payment.

21. On September 26, 2013, we again requested full payment and informed NEP and its Board that failure to pay by October 3, 2013 would result in CLG filing this motion. Once again, we were promised full payment of all outstanding invoices totaling over $300,000 by October 11, 2013. We did not receive payment.

22. On October 13, 2013, based on a conference call with NEP, it appears that NEP is unable to make payment and will remain in that situation for at least the foreseeable future and perhaps forever.

23. During mediation, NEP agreed to fund a trust account to effect its contribution to the required settlement payment and to create an additional fund for defense costs of pending litigation.

24. The parties agreed to set up an account in the U.S. to house the NEP settlement contribution plus an amount to fund pending litigation, including the class

actions, the Derivative Actions and the SEC litigation. NEP was supposed to provide the requisite funds to CLG for initial handling.

25. In addition to spending hundreds of hours drafting, negotiating, and revising the voluminous settlement documents, we have also spent a significant amount of time arranging the deposit of these settlement and defense costs funds, including coordinating with financial institutions. The Company has not deposited the money and there seem no foreseeable prospect of this happening.

26. CLG very well have to bring its own legal proceedings, including arbitration against NEP over unpaid invoices in this and the other matters.

27 CLG also has acted, and will continue to act, consistently with New York Rule of Professional Conduct 1 16(e) to further alleviate any potential prejudice to NEP

28. If applicable, CLG will promptly deliver to NEP or its counsel any papers and property to which it is entitled.

29 CLG has given NEP due notice of its intention to withdraw

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I executed this declaration on August 13 2014.

_____
Jaime J. Santos