UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

In re                                        CONSOLIDATED AS
                                             10 Civ. 4577 (MGC)
CHINA NORTH EAST PETROLEUM HOLDINGS
LIMITED SECURITIES LITIGATION

                                             OPINION

----------------------------------X


APPEARANCES:


          POMERANTZ HAUDEK GROSSMAN & GROSS LLP
          Attorneys for Lead Plaintiff Acticon AG
          100 Park Avenue, 26th Floor
          New York, New York 10017

          BY: Jeremy A. Lieberman, Esq.
              Marc I. Gross, Esq.
              Shaheen Rushd, Esq.
              Anthony F. Maul, Esq.


          MURPHY, PEARSON, BRADLEY & FEENEY
          Attorneys for Defendants China North East
          Petroleum Holdings Limited, Wang Hong Jun,
          Guizhi Ju, and Zhang Yang
          88 Kearny Street, 10th Floor
          San Francisco, California 94108

          BY:  Thomas P. Mazzucco
               Aaron K. McClellan
               Nicholas C. Larson
               James A. Lassart

**Cedarbaum, J.**

  This putative class action is brought on behalf of all persons who purchased China North East Petroleum Holdings, Ltd. ("China North") securities during the period from May 15, 2008 through and including May 26, 2010 (the "class period"). In the Consolidated Class Action Complaint ("Complaint") dated January 15, 2011, lead plaintiff Acticon AG ("Acticon") brings claims against defendants China North, its former directors Wang Hung Jun, Guizhi Ju, Zhang Yang, Edward M. Rule, Li Jing Fu and Yu Li Guo (collectively "the individual defendants"), Robert C. Bruce ("Bruce") and Ralph E. Davis Associates, Inc. ("Davis") for alleged violations of §§ 10(b) & 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) & 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

  Defendants moved in three groups to dismiss Acticon's Complaint.  In October 2011, I dismissed the case on the ground that Acticon had failed to demonstrate loss.  The Second Circuit reversed, holding that Acticon had satisfactorily pled loss causation, and remanded the case for further proceedings.  I subsequently dismissed the claims against Davis and Bruce for failure to plead scienter.  I now re-examine the present motion by China North and the individual defendants to dismiss for failure to state a claim pursuant to Rule 12(b)(6).  That motion is granted because of Acticon's failure to plead scienter.

## I.   FACTS

China North is a Nevada corporation engaged in the exploration and production of crude oil in northern China.  China North's shares are publicly traded on the NYSE MKT exchange. The individual defendants are the following current and former officers of China North: China North's former Chairman and Chief Executive Officer, Wang Hung Jun ("Wang"); Wang's mother, Guizhi Ju ("Ju"), who also formerly served on China North's Board of Directors; Wang's brother-in-law, Yu Li Guo ("Yu"), who also formerly served on China North's Board of Directors; China North's former Chief Financial Officer, Zhang Yang ("Zhang"); China North's current Chairman, Edward M. Rule ("Rule"); and China North's current Chief Executive Officer, Li Jing Fu ("Li").

Acticon alleges that defendants made misstatements in China North's financial disclosures, which later required restatement. According to the Complaint, these misstatements artificially inflated the price of China North's securities, the value of which subsequently declined following China North's corrective disclosures.  The first two alleged misstatements relate to China North's accounting practices; the final alleged misstatement was about China North's internal controls.

First, Acticon alleges that China North incorrectly accounted for certain warrants.  According to the Complaint, China North entered into a Purchase Agreement in which LotusBox Investments

3

agreed to pay China North $15 million cash in exchange for, <u>inter alia</u>, warrants exercisable under certain conditions for China North stock.  Acticon contends that under GAAP regulations, these warrants should have been classified as liabilities, but that the company instead accounted for the warrants as equity instruments. The effect of this accounting error was that China North failed to recognize a loss on the warrants, and therefore the company's net income, as reported in its financial statements, was inflated by $9.8 million.

Second, Acticon alleges that defendants incorrectly calculated the value of China North's oil properties and, as a result, the company failed to take a necessary impairment.[1]  When China North later issued a restatement correcting the value of its oil properties, the price of China North's stock declined.

In addition to the aforementioned accounting misstatements, Acticon also alleges that defendants made material misstatements about the strength of China North's internal controls.  In various public disclosures, including China North's 2008 Form 10-K, defendants certified the strength of China North's internal controls, acknowledging that it was management's responsibility to

---

[1] Pursuant to relevant accounting regulations, China North was required to perform an annual "ceiling test." A ceiling test compares anticipated net revenues from a property to that property's capitalized costs and expenses. If the costs and expenses exceed the anticipated net revenues, an impairment must be immediately recognized.

"provide reasonable assurance regarding prevention or timely detection of unauthorized acquisitions, use or disposition of the company's assets that could have a material effect on the financial statements" and certifying that "internal control over financial reporting was effective."  A subsequent forensic audit of China North performed by accounting firm John Lees Associates (JLA) uncovered a number of allegedly illicit money transfers from the company to then-directors Wang and Ju.[2]  Acticon cites these money transfers and the fact that China North had no policy barring such transfers as evidence of the lack of internal controls at China North.

## II.   STANDARD OF REVIEW

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).  The complaint need only include "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows

---

[2] This audit ultimately concluded that the money transfers to Wang and Ju were for business expenses, and that "no evidence exists to indicate that funds were misappropriated, stolen or otherwise misused by anyone." The forensic audit also did not find any material misrepresentations in China North's prior financial disclosures filed with the SEC.

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In order to state a claim for relief under Section 10(b) and Rule 10b-5, a plaintiff must also allege with particularity facts necessary to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA.  In order to survive a motion to dismiss, Rule 9(b) requires that "the circumstances constituting fraud" must be stated "with particularity."  "Allegations that are conclusory or unsupported by factual assertions are insufficient" to meet the heightened pleading requirement of Rule 9(b).  ATSI Commnc'ns Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007).  The PSLRA further requires that to adequately plead scienter a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A).  To establish the requisite scienter in the securities fraud context, plaintiff must allege either defendant's motive and opportunity to commit fraud or "strong circumstantial evidence of conscious misbehavior or recklessness."  In re Scottish Group Sec. Litig., 524 F. Supp. 2d 370, 384 (S.D.N.Y. 2007).

### III. DISCUSSION

Acticon alleges no specific motive on the part of China North or the individual defendants for making the alleged misstatements.

Instead, the Complaint refers only to a generalized intent to "deceive the investing public" in order to induce purchasers to "purchase China North common stock at artificially inflated prices." Such a generalized allegation of motive does not make the required showing of scienter. Chill v. General Elec. Co., 101 F.3d 263, 268 (2d Cir. 1996) ("[m]otive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. The motive to maintain the appearance of corporate profitability, or of the success of an investment, will naturally involve benefit to a corporation, but does not entail concrete benefits.") (internal quotation marks and citations omitted).

Therefore, in order to plead scienter adequately, Acticon must provide strong circumstantial evidence of conscious misbehavior or recklessness on the part of defendants. Kalnit v. Eichler, 264 F.3d 131, 142 (2d Cir. 2001). Such reckless conduct must "at the least, [be] conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." Id. This showing of recklessness must be so egregious as to give rise to a "strong inference of fraudulent intent." Chill, 101 F.3d at 269. The allegations made by Acticon in support of its Complaint fail to meet this standard.

7

The alleged misstatements regarding the LotusBox warrants and the valuation of China North's properties both relate to accounting errors.  The Second Circuit has consistently held that "allegations of a violation of GAAP provisions or SEC regulations, without corresponding fraudulent intent, are not sufficient to state a securities fraud claim."  Chill, 101 F.3d at 270.  This showing of fraudulent intent is especially crucial where, as here, the accounting procedures in question were complex and required the application of multi-part tests.[3]  In re Bristol-Myers Squibb Securities Litigation, 312 F. Supp. 2d 549, 567 (S.D.N.Y. April 1, 2004).  Acticon fails to establish the required fraudulent intent, instead arguing that "[t]he sheer size of [China North's later] restatement bespeaks of Defendants' scienter."  I disagree. A restatement of financial results cannot, in itself, provide a basis for inferring scienter.  In re Bristol-Myers, 312 F. Supp. 2d at 565 ("Restatement alone does not provide a basis for inferring scienter.");  Stevelman v. Alias Research Inc., 174 F.3d

_____

[3] In determining how to account for the LotusBox warrants, the SEC provides for three different sets of regulations which might be applicable (EITF 00-19, FASB Statement No. 133 and FASB Statement No. 150).  Depending on the very specific and often difficult to categorize nature of the warrants in question, these regulations can either require warrants to be treated as a liability (as Acticon contends was proper) or as an equity instrument (as China North initially accounted for the warrants).  The calculations involved in accounting for the value of China North's oil properties is similarly complex, requiring a ceiling test which itself is based on a number of complex calculations and projections.

79, 84-85 (2d Cir. 1999) (subsequent changes in the method of accounting for sales did not establish the conscious misbehavior or recklessness required to show scienter).

Acticon's allegations about China North's internal control violations likewise fail to establish scienter on the part of defendants.  In asserting that defendants' misstatements about internal controls were reckless in the context of securities fraud, Acticon must show that "defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation."  Novak v. Kasaks, 216 F.3d 300, 308-9 (2d Cir. 2000) ("Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them.").  Acticon does not provide any evidence that defendants knew, or should have known, about internal control problems at China North prior to certifying the 2008 Form 10-K.  Instead, the Complaint merely asserts that the individual defendants, as members of China North's Board of Directors, were reckless "in allowing the Company's internal controls to deteriorate to such a degree" as to allow for the allegedly illicit transfers.  The Second Circuit has previously found such broad and conclusory allegations to be "meaningless." Decker v. Massey-Ferguson, Ltd., 681 F. 2d 111, 119-120 (2d. Cir. 1982).

Finally, in order to establish scienter against a corporate entity, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 195 (2d Cir. 2008). Acticon has failed to establish that any individual related to China North possessed the requisite scienter to state a securities fraud claim; thus, the Complaint cannot establish scienter with respect to China North.

Therefore, the motion to dismiss the Complaint against China North and the individual defendants for failure to plead scienter is granted. This disposes of the case against all defendants, and the Clerk is therefore directed to close the case.


SO ORDERED.


Dated:    New York, New York
          January 15, 2015


                                   S/_____
                                        MIRIAM GOLDMAN CEDARBAUM
                                        United States District Judge