```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 8, 2017
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
                                                            :
IN RE CHINA NORTH EAST                                      :        CONSOLIDATED AS
PETROLEUM HOLDINGS LIMITED                                  :        10-CV-4577 (KBF)
SECURITIES LITIGATION,                                      :
                                                            :        <u>MEMORANDUM
                                                            :        DECISION & ORDER</u>
                                                            :
------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

Before this court is a motion by Acticon AG ("Acticon") for class certification pursuant to Federal Rule of Civil Procedure 23(b)(3) seeking to certify the following class: "All purchasers of China North Eat Petroleum Holdings Limited securities, during the period from May 15, 2008 through and including May 26, 2010 (the 'Class Period')." (ECF No. 190.) Plaintiff also seeks class damages of $32.9 million, attorneys' fees totaling 25% of recovered damages, and expenses of $171,908.09. (ECF Nos. 190, 191.) For the reasons discussed below, the motion for class certification and class-wide damages is GRANTED.

I.    BACKGROUND

Three securities class action suits were filed in 2010 against defendants China North East Petroleum Holdings, Ltd. ("CNEP") and certain individuals. On November 17, 2010, the Hon. Miriam Cedarbaum, before whom these actions were then assigned, consolidated the three actions and appointed Acticon as lead plaintiff. (ECF No. 37.) Acticon then filed a Consolidated Class Action Complaint under the caption "In re China North East Petroleum Holdings Limited Securities Litigation" on January 11, 2011. (ECF No. 39.) After two rounds of motions to

dismiss, the Second Circuit's affirmed dismissal of certain claims and reversed dismissal of certain claims against individual defendants Wang Hong Jun ("Wang") and Ju Guizhi ("Ju") and corporate defendant CNEP. (ECF No. 167).

The case was transferred to the undersigned on November 13, 2015. Acticon filed a Second Consolidated Amended Class Action Complaint ("Second Amended Complaint") on December 15, 2015. (ECF No. 179.) Acticon alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10-b5, 17 C.F.R. § 240.10b-5. To date, defendants have not answered or otherwise responded to the Second Amended Complaint.

Acticon obtained a certificate of default from the Clerk of Court on February 11, 2016. (ECF No. 185.) It filed an application for default judgment on February 8, 2016. (ECF No. 184.) On April 19, 2016, this Court issued an Order directing defendants to Show Cause why default judgment should not be entered against them on May 11, 2016. (ECF No. 186.) The Court also directed plaintiff to provide "any and all additional documentation in support of their request for damages, interest, and attorneys' fees, if applicable, prior to the Show Cause hearing. This shall be plaintiffs' final opportunity to provide support for such claims." (Id.)

On May 11, 2016, plaintiff submitted a new motion for default judgment and a new motion for class certification,[1] seeking class damages of $32.9 million, attorneys' fees totaling 25% of recovered damages, and expenses of $171,908.09. (ECF Nos. 190, 191.)

---

[1] Acticon had filed two previous motions for class certification. The first motion was denied as premature and the second motion was never decided.

2

Despite being served with the Court's show-cause order and the supporting materials, including the Second Amended Complaint and summons, (see ECF Nos. 182, 184 Ex. B.), defendants failed to appear at the hearing. On June 1, 2016, the Court granted plaintiff's motion for a default judgment as to liability but denied it as to damages. (ECF No. 193.) The Court also denied plaintiff's motion for class certification as moot. (Id.)

On appeal, the Second Circuit affirmed this court's determination of liability but vacated and remanded this court's denial of plaintiff's class certification motion and determination as to damages. (ECF No. 197.) The Second Circuit directed this Court on remand to "determine whether a class may be certified and, if so, what damages are appropriate based on Acticon's submissions." (Id.)

On May 9, 2017, the Court issued an order noting that the Mandate from the Second Circuit has issued and reopening this case. (ECF No. 198.) The Court directed the parties to inform the Court, not later than May 22, 2017, how they propose to proceed to final resolution in this matter. (Id.) The Court also directed plaintiff to serve a copy of the order on defendants and to post a certificate of service on the docket. (Id.)

Plaintiff served the Court's May 9 order on defendants and posted a certificate of service on May 18, 2017. (ECF No. 18.) Subsequently, by letter dated May 22, 2017, plaintiff responded to this Court's May 9 order and requested that the Court consider and rule upon the motion for class certification and the request for entry of class damages previously filed at ECF Nos. 188-191. (ECF No. 200.) By

3

order dated August 7, 2017, the Court noted that defendants have still not appeared in this action and that the Court has not received a response from defendants to the Court's May 9, 2017, order. (ECF No. 201.) Accordingly, the Court stated that it would proceed to rule on plaintiff's motion for class certification on the previously filed papers. (Id.) Plaintiff seeks to certify a class of "[a]ll purchasers of China North East Petroleum Holdings Limited securities, during the period from May 15, 2008 through and including May 26, 2010 (the 'Class Period')."[2] (ECF No. 190.) The Court takes up that motion now.

## II. LEGAL STANDARDS

The Supreme Court has made clear that "[t]he class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011) (quoting Califano v. Yamasaki, 442 U.S. 682, 700-01 (1979)). A plaintiff seeking certification of a class must prove by a preponderance of the evidence that its proposed class meets the requirements of Rule 23(a) and, if those requirements are met, that the class is maintainable under at least one of the subdivisions of Rule 23(b). See id. at 345-46; Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008). Here, plaintiff alleges that they have met the requirements of Rule 23(b)(3).

Rule 23(a) provides that class certification may be appropriate if:

---

[2] Excluded from the class are defendants, officers and directors of China North East Petroleum Holdings Limited, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest. (ECF No. 190 at 2 n.1.)

4

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Rule 23(b)(3) allows certification if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); see also Johnson v. Nextel Commc'ns Inc., 780 F.3d 128, 137 (2d Cir. 2015).

Rule 23 is not a mere pleading standard. Dukes, 564 U.S. at 349-50. Plaintiff bears the burden of affirmatively showing that each element of Rule 23 is satisfied. See id. at 350 ("A party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc."). In making a determination as to whether class certification is appropriate, the district court must receive enough evidence—by affidavits, documents, or testimony—to be satisfied by a preponderance of the evidence that each Rule 23 requirement has been met. See Teamsters Local 445, 546 F.3d at 202-04 (quoting In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)) (internal quotation marks omitted).

III.   DISCUSSION

Acticon's motion for class-certification is unopposed. "Even when unopposed, a motion for class certification must be evaluated on its merits." Douglin v. GreatBanc Tr. Co., 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015). For the reasons discussed below, the Court concludes that plaintiff has proven, by a preponderance of the evidence, that their proposed class meets the requirements of Rule 23(a) and 23(b)(3).[3]

    A.   Rule 23(a) Requirements

        1.   Numerosity

Rule 23(a)(1) requires that the "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "[N]umerosity is presumed at a level of 40 members." Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995) (citation omitted). Here, where millions of outstanding CNEP shares were traded during the Class Period and there are likely to be at least thousands of beneficial holders of such shares throughout the United States, numerosity is satisfied. See In re Facebook, Inc., IPO Sec. & Derivative Litig., 312 F.R.D. 332, 341 (S.D.N.Y. 2015); Yang v. Focus Media Holding Ltd., Case No. 11-cv-9051, 2014 WL 4401280, at *11 (S.D.N.Y. Sept. 4, 2014).

        2.   Commonality

Under Rule 23(a)(2), plaintiffs must demonstrate that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires

---

[3] Having considered the applicable factors under Rule 23(g), the Court also appoints Pomerantz LLP as class counsel.

6

the plaintiff to demonstrate that the class members 'have suffered the same injury.'" Dukes, 564 U.S. at 338 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 157 (1982)). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Id. (citation and internal quotation marks omitted).

"Where plaintiffs allege that class members have been injured by similar material misrepresentations and omissions, the Commonality Requirement is satisfied." McIntire v. China MediaExpress Holdings, Inc., 38 F. Supp. 3d 415, 424 (S.D.N.Y. 2014); see In re Facebook, Inc., 312 F.R.D. at 341 ("The commonality requirement has been applied permissively by courts in the context of securities fraud litigation, and minor variations in the class members' positions will not suffice to defeat certification." (quoting Dietrich v. Bauer, 192 F.R.D. 119, 124 (S.D.N.Y. 2000).) Here, plaintiff alleges misconduct by defendants that is common to all prospective class members; plaintiff also allege that all class members have been injured by similar omissions and misrepresentations by defendants. Plaintiff's claims call for class-wide answers to common questions such as whether defendants statements to the investing public during the Class Period misrepresented material facts about the business, operations, and management of CNEP; whether the individual defendants caused CNEP to issue false and misleading financial statements during the Class Period; and whether the prices of CNEP securities

7

during the Class Period were artificially inflated because of defendants' conduct alleged in the Second Amended Complaint. Rule 23(a)(2) is easily met here.

        3.    <u>Typicality</u>

Rule 23(a)(3) provides that a class action may be maintained only if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." <u>Robidoux v. Celani</u>, 987 F.2d 931, 936 (2d Cir. 1993) (citations omitted). Here, the claims of both lead plaintiff and the class are based on the same misstatements and omissions made by defendants; both lead plaintiff and the class allege injuries that stem from those misstatements and omissions. The conduct that is alleged to have injured lead plaintiff is the same conduct alleged to have injured the other class members. Accordingly, Rule 23(a)(3) is satisfied in this case.

        4.    <u>Adequacy</u>

Rule 23(a)'s last requirement—adequacy—is also satisfied here. To prove that the "representative parties will fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), plaintiffs must demonstrate that (1) the proposed class counsel is "qualified, experienced and able to conduct the litigation," and (2) the proposed class representatives have no interests that are "antagonistic to the interest of other members of the class." <u>In re Flag Telecom Holdings, Ltd. Sec. Litig.</u>, 574 F.3d 29, 35 (2d Cir. 2009) (citation and internal quotation mark omitted). Here, lead plaintiff "possess[es] the same interest and suffer[ed] the same injury as

the class members," Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625-26 (1997), and no potential conflicts of interest appear to exist.  Furthermore, lead plaintiff's counsel has extensive experience in the field of securities litigation and is qualified to conduct this litigation (they have thus far been diligent in monitoring this litigation, including regularly communicating with lead plaintiff).

  B. Rule 23(b)(3) Requirements

"[T]o certify a class pursuant to Rule 23(b)(3), a plaintiff must establish (1) predominance—'that the questions of law or fact common to class members predominate over any questions affecting only individual members'; and (2) superiority—'that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'" Johnson, 780 F.3d at 137 (citing Fed. R. Civ. P. 23(b)(3)).  Plaintiff has met their burden of establishing these elements by a preponderance of the evidence.

    1. Predominance

Predominance "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Myers, 624 F.3d at 547 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)) (internal quotation marks omitted).  The purpose of the predominance requirement is to ensure that a class will be certified only where it would "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id. (quoting Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc., 502 F.3d 91, 104 (2d Cir. 2007)) (internal quotation marks omitted).  "Like the commonality inquiry,

9

a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" Johnson, 780 F.3d at 138 (citation omitted).  However, the predominance requirement is "more demanding than Rule 23(a)"—and requires a further inquiry "into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues."  Id. (citation and internal quotation marks omitted); see also Myers, 624 F.3d at 547.

As the Supreme Court has observed, "[i]n securities class action cases, the crucial requirement for class certification will usually be the predominance requirement of Rule 23(b)(3)."  Halliburton Co. v. Erica P. John Fund, Inc. ("Halliburton II"), 134 S. Ct. 2398, 2412, 189 L. Ed. 2d 339 (2014).  As set forth above, common questions of law and fact relating to liability exist as to all members of the class.  These questions predominate over any questions affecting individual members alone.  Importantly, "[w]hether common questions of law or fact predominate in a securities fraud action often turns on the element of reliance." Erica P. John Fund, Inc. v. Halliburton Coo. ("Halliburton I"), 563 U.S. 804, 810 (2011).  Here, plaintiff's claims primarily involve defendants' failure to disclose material information, and plaintiff invokes the Affiliated Ute presumption applicable to material omissions.  Under this presumption, "an omission of a material fact by a defendant with a duty to disclose establishes a rebuttable

10

presumption of reliance upon the omission by investors to whom the duty was owed." Levitt v. J.P. Morgan Sec., Inc., 710 F.3d 454, 465 (2d Cir. 2013) (citing Affiliated Ute Citizens of Utah v. United States, 406 U.S. 128, 153-53 (1972)); see In re Smith Barney Transfer Agent Litig., 290 F.R.D. 42, 48 (S.D.N.Y. 2013).

Plaintiff is correct that this case is primarily focused on numerous material omissions, including the decline in value of CNEP's oil properties below their capitalized costs and the losses associated with certain warrants. Even "where plaintiffs' claims are based on a combination of omissions and misstatements," the Affiliated Ute presumption may apply because the distinction between misstatements and omissions "is often illusory." In re Smith Barney Transfer Agent Litig., 290 F.R.D. at 47. The Court finds that, among other issues, reliance is most effectively litigated on a class-wide basis here, and that the predominance requirement is satisfied.

### 2. Superiority

To certify a class under Rule 23(b)(3), a plaintiff must also establish that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The factors pertinent to the superiority analysis include:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Id.

Here, the members of the proposed class have little interest in pursuing individual actions, as the costs and expenses of such actions would be prohibitive. See In re Blech Sec. Litig., 187 F.R.D. 97, 107 (S.D.N.Y. 1999) ("In general, securities suits such as this easily satisfy the superiority requirement of Rule 23."). Furthermore, thousands of separate litigations would be wasteful and result in inefficient expenditure of judicial resources; it would also risk disparate results.  In short, a class action is superior to all other available methods for fairly and effectively adjudicating the controversy at hand.

    C.    <u>Damages</u>

Plaintiff seeks class damages of $32.9 million, attorneys' fees totaling 25% of recovered damages, and expenses of $171,908.09.  (ECF Nos. 190, 191.)  As discussed below, the Court GRANTS this request.

The Second Circuit has affirmed this Court's default-judgment determination as to liability.  While a party's default is considered a concession of all well-pleaded allegations of liability, it is not considered an admission of damages. Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc., 699 F.3d 230, 234 (2d Cir. 2012).  Plaintiff bears the burden of substantiating its claims with evidence to prove the extent of class-wide damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992). "There must be an evidentiary basis for the damages sought," id., and so a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty," Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1997).  To determine the damages owed, courts often conduct an

inquest hearing, but such a hearing is not required.  See Cement, 699 F.3d at 234 ("Rule 55(b)(2) and relevant case law give district judges much discretion in determining when it is 'necessary and proper' to hold an inquest on damages." (quoting Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 54 (2d Cir. 1993) (internal quotation marks omitted))).

The Court determines that no inquest hearing is necessary here; rather, the Court grants plaintiff's request for class-wide damages based on the paper submissions.  Plaintiff submitted a damages estimated based on analysis undertaken by Dr. Israel Shaked of the Michael-Shaked Group, which is filed at ECF No. 191-2.  Dr. Shaked "analyzed information disseminated by [CNEP], press releases, equity analyst reports, news articles, SEC filings, the performance of China North's common stock, the performance of the overall stock market and an oil and gas exploration and production ("E&P") index, trading volume, institutional holdings, as well as other pertinent data and documents."  (Affidavit of Dr. Israel Shaked ¶ 2 ("Shaked Aff."), ECF No. 191-2.)  Dr. Shaked calculates that "[m]isrepresentations and omissions caused China North's common stock to be inflated by as much as $3.55 during the Class Period. . . . Consequently, China North's misrepresentations and omissions caused investors to suffer losses of up to $3.55 per share of common stock."  (Id. ¶ 3.)  Using a "two-trader proportional trading model," Dr. Shaked estimates that "[a]ggregate damages suffered by investors in China North's common stock . . . amount to $32.9 million."  (Id. ¶ 6.)

13

Based on plaintiff's submissions, the Court is satisfied that plaintiff has met its burden of substantiating its claim of class-wide damages.

IV. CONCLUSION

For the reasons stated above, plaintiff's motion for class certification is GRANTED. The class is awarded damages of $32.9 million and Pomerantz LLP is awarded attorneys' fees totaling 25% of recovered damages as well as expenses of $171,908.09.

The Clerk of Court is directed to enter judgment in plaintiff's favor on their claims and to terminate this action.

SO ORDERED

Dated:  New York, New York
        August 8, 2017

_____
KATHERINE B. FORREST
United States District Judge